UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| S.J. LOUIS CONSTRUCTION OF TEXAS, LTD. | CIVIL ACTION |
| VERSUS | |
| CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE | NO. 14-00566-JWD-EWD |

**RULING**

Before the Court is a *Motion in Limine to Exclude Expert* filed by the Defendant and Plaintiff-in-Counterclaim, the City of Baton Rouge/Parish of East Baton Rouge ("City-Parish").[1] Plaintiff and Defendant-in-Counterclaim, S.J. Louis Construction of Texas, Ltd., ("SJL") has filed an *Opposition* to which the City-Parish has filed a *Reply*.[2] For the following reasons, the *Motion* shall be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This diversity action arises out of two public works contracts that were awarded to SJL by the City-Parish: the Bayou Duplantier Sewer Area Upgrades and the Central Consolidation Pump Station 42 Force Main, Phase II (collectively "construction projects").[3] SJL filed this lawsuit asserting claims in relation to both sewer upgrade construction projects against the City-Parish for breach of contract, breach of warranties, breach of good faith and fair dealing, misrepresentation, and for violating the Prompt Payment Act. The City-Parish has denied SJL's allegations and has asserted its own counterclaims against SJL, alleging that the construction company breached its

---

[1] Doc. 84.
[2] Doc. 87 and Doc. 92.
[3] Docs. 1 and 6.

contractual duties and obligations under both contracts, and was negligent in its performance of both projects.[4]

During the discovery process, SJL identified Robert Lindquist ("Lindquist") as a proffered expert in the field of bidder expectations and bid reasonableness.[5] Lindquist furnished a report dated August 12, 2016, in which he rendered his opinions on SJL's bidder expectations and bid reasonableness regarding both construction projects.[6] The City-Parish now seeks to exclude Lindquist from testifying.

The City-Parish argues that Lindquist's testimony and report will not offer any assistance to the trier of fact. More specifically, the City-Parish argues that Lindquist is not qualified to make such opinions. The City-Parish also argues that Lindquist's opinions are wholly subjective, are not the product of sound methodology and principles, and "do not elicit or otherwise outline specialized or technical information" that a layperson could not independently ascertain from a review of SJL's bid documents.[7] In the alternative, the City-Parish argues that Lindquist "should only be permitted to testify generally as to the factors or variables that might influence the reliability of SJL's bid submissions."[8] However, he should not be allowed to express any opinion "regarding the application of any portion of the bid to what was actually done during the construction work of either Project," or about the reasonableness of the damages analysis offered by Analytical Management Solutions ("AMS") through Peter Wade because Lindquist did not conduct "any independent calculation" or "confirm the findings proffered by AMS within its report."[9]

---

[4] Docs. 13 and 47. SJL filed an *Answer* to the City-Parish's *Rule 13(E) Compulsory Counterclaim.* Doc. 48.
[5] Doc. 84-3, pp. 1-2.
[6] Doc. 84-5.
[7] Doc. 84-2, pp. 10-11.
[8] Doc. 84-2, p. 11.
[9] Doc. 84-2, p. 11.

SJL has submitted an *Opposition* in which it disagrees with City-Parish's characterization of Lindquist's proffered testimony.[10] SJL contends that Lindquist's extensive experience in the construction industry makes him a qualified expert in the area of bidder expectations and bid reasonableness. SJL also argues that Lindquist possesses specialized knowledge to analyze these issues in order to render a reliable opinion that would assist the trier of fact.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.[11] Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[12]

The City-Parish's motion is a *Daubert* challenge primarily based upon Lindquist's qualifications, his methodology and principles used to formulate his opinions, and the relevance of his testimony.[13] When *Daubert* is invoked, a district court may, but is not required to, hold a hearing where the proffered opinion may be challenged.[14] However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry."[15] "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'"[16]

---

[10] Doc. 87.
[11] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).
[12] Fed. R. Evid. 702.
[13] *Daubert*, 509 U.S. 579.
[14] *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016).
[15] *Id.*
[16] *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.[17]

Cases following *Daubert* have expanded upon these factors and have explained that *Daubert's* listing is neither all-encompassing nor is every factor required in every case.[18] Indeed, courts may look to other factors.[19]

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., which provide that the court serves as the gatekeeper, ensuring that all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.[20]

---

[17] *Watkins v. Telsmith, Inc*., 121 F.3d 984, 988-89 (5th Cir. 1997)(internal citations omitted).
[18] *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp*., 394 F.3d 320, 325 (5th Cir. 2004).
[19] *Joiner*, 522 U.S. at 146.
[20] *Fayard v. Tire Kingdom, Inc*., Civil Action No. 09-171, 2010 WL 3999011, *1 (M.D.La. Oct. 12, 2010)(internal citations omitted)(citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

In determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the sense that all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[21] "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."[22]

Overall, the Court has broad discretion in deciding whether to admit expert opinion testimony.[23] "Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'"[24] Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"[25]

---

[21] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).
[22] *Vogler v. Blackmore*, 352 F.3d 150, 156 n. 5 (5th Cir. 2003)(quoting Fed. R. Evid. 702 advisory committee notes).
[23] *See, e.g., Joiner*, 522 U.S. at 138-39 (holding that appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* is under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998)("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").
[24] *Johnson v. Samsung Elecs. Am. Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011)(citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)).
[25] *Scordill v. Louisville Ladder Grp., L.L.C.*, Civil Action No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003)(Vance, J.)(internal citations omitted)(relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[26]

Even so, an expert may not merely rest on his credentials and give subjective opinion on relevant issues.[27] "Without more than credentials and subjective opinion, an expert's testimony that 'it is so' is not admissible."[28] An expert must furnish "some objective, independent validation of [his] methodology [; t]he expert's assurances that he has utilized generally accepted [principles] is insufficient."[29]

### III. ANALYSIS

A. Qualifications

The City-Parish argues, albeit somewhat obscurely, that Lindquist lacks the qualifications to opine about bidder expectations and bid reasonableness in this case because he lacks experience in the area of "sanitary sewer pipe installation in Louisiana."[30] The City-Parish asserts, and it is not disputed, that at the time Lindquist reviewed the facts of this case and prepared his expert report, he was not a licensed engineer in the state of Louisiana.[31] Additionally, the City-Parish argues that Lindquist has no experience in the local construction industry, and lacks familiarity with the geological variables in the Baton Rouge area. The City-Parish further contends that Lindquist's construction experience in Louisiana is strictly limited to serving as an arbitration panelist and working on one highway and bridge construction project in Shreveport, Louisiana

---

[26] *Kumho Tire*, 526 U.S. at 150, cited with approval in *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).
[27] *Joiner*, 522 U.S. at 146.
[28] *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).
[29] *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)(internal citations omitted).
[30] Doc. 84-2, pp. 6-7.
[31] Doc. 84-6, pp. 24-25; Doc. 87, p. 7, n. 6.

6

during the 1980s. Therefore, the City-Parish seeks to exclude Lindquist from testifying as an expert because he lacks the necessary qualifications.

In response, SJL argues that the fact that Lindquist lacked a professional engineering license in Louisiana when he prepared his report, and has relatively limited construction experience in Louisiana is "immaterial to his testimony in this matter."[32] SJL asserts that it is not proffering Lindquist as an expert in civil engineering or in construction projects in Louisiana.[33] Rather, SJL is proffering Lindquist as expert on the reasonableness of its bid estimate for the construction projects in this case, and whether SJL's expectations as to its anticipated costs and production rates were reasonable at the time of its bid submissions. SJL contends that based upon his credentials and forty-plus years of practical experience in the construction industry, particularly his experience in preparing and overseeing construction bidding on a national level, Lindquist is qualified to testify on the issue of bidder expectations and bid reasonableness.

Rule 702 of the Federal Rules of Evidence requires that an expert be properly qualified. Nonetheless, Rule 702 does not require an expert to have the perfect possible credentials to testify as an expert.[34] Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications.[35] The Supreme Court in *Kumho Tire*[36] and *Daubert*[37] endorsed expert testimony based upon personal observation and experience. Additionally, the 2000 Advisory Committee Notes to Rule 702 state that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of

---

[32] Doc. 87, p. 7.
[33] SJL further notes that since the time of Lindquist's deposition, he has become licensed as a professional engineer in Louisiana. Doc. 87, p. 7 n. 6.
[34] *See Bell v. Foster Wheeler Energy Corp.*, Civil Action No. 15-6394, 2016 WL 5847124, at *2 (E.D. La. 2016).
[35] *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999), *superseded by statute on other grounds*.
[36] 526 U.S. at 148-49.
[37] 509 U.S. at 592.

experience" which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony."

The Court finds that Lindquist meets Rule 702's liberal standard. Lindquist's *curriculum vitae* reflects that he has been involved in the construction industry for over forty years.[38] He holds a B.S. in Civil Engineering from Penn State University and a Masters in Business Administration from Rollins College.[39] At the time he prepared his expert report and was deposed in this case, Lindquist held professional engineer licenses from the states of Texas, Florida, Colorado, and Illinois.[40] During his deposition testimony, Lindquist explained that the majority of his construction experience has been in overseeing the estimations of projects, which required him to review all construction bids pre-submission.[41] According to his *curriculum vitae*, "Lindquist has been responsible for estimating over 3,000 projects totaling more than $12 billion."[42] In four cases, one in Colorado and three in Florida, courts have allowed Lindquist to testify as an expert on construction issues, where bidder expectations and bid reasonableness were one aspect of his proffered expert testimony.[43] Unlike those other cases, however, the scope of Lindquist's proffered testimony in this instance is limited to the issue of bidder expectations and bid reasonableness.[44]

The Court is satisfied that Lindquist's practical experience and extensive background in the construction industry make him qualified to allow him to testify on the issue of bidder

---

[38] Doc. 84-4, p. 8; Doc. 84-6, p. 37.
[39] Doc. 84-4, p. 1.
[40] Doc. 84-4, pp. 3 and 8.
[41] Doc. 84-6, pp. 30-31.
[42] Doc. 84-4, p. 2.
[43] Doc. 84-6, pp. 48-49, 51-54; Doc. 84-6, pp. 159-60.
[44] In its Opposition, SJL explained that the analysis of bidder expectations and bid reasonableness as it relates to SJL's actual performance on the respective construction projects was going to be addressed be another SJL expert: Analytical Management Solutions through Peter Wade. Doc. 87, p. 8.

expectations and bid reasonableness. The City-Parish's objections to Lindquist's qualifications go to the weight that his testimony should be accorded, not its admissibility.[45]

### B. Methodology and Knowledge

The City-Parish also argues that Lindquist's opinions about the reasonableness of SJL's bids and bidder expectations are wholly subjective and are not based upon any scientific or technical methodology. Although Lindquist's resume outlines his knowledge of various statistical methods and mathematical modeling techniques that can be used to conduct data analysis, he testified to using no such analytical methods in this case.[46] The City-Parish asserts that Lindquist's opinions "boil down to checking the quantities of crew size, materials, equipment proposed by SJL, and the associated dollar amounts attributable to same."[47] The City-Parish dismisses Lindquist's reliance on one industry-specific publication, the RS Means Standard Construction Cost Data 2010 Edition, because he solely used it to check SJL's construction cost estimates.[48] Additionally, the City-Parish asserts that Lindquist's experience in overseeing bid estimates in the construction industry "involve[d] nothing more than general arithmetic [to] review [] costs and estimations."[49] Therefore, the City-Parish seeks to exclude Lindquist as an expert because his opinions "do not elicit or otherwise outline specialized or technical information that cannot otherwise be ascertained from a layperson's review of SJL's bid documents."[50]

In response, SJL argues that Lindquist's report and deposition testimony demonstrate that he relied upon more than simple arithmetic to derive his conclusion that "SJL's expectations at the time of the bids, and the bids themselves, were both reasonable and within the industry standard."[51]

---

[45] *Carlson*, 822 F.3d at 199.
[46] Doc. 84-4, p. 3.
[47] Doc. 84-2, p. 5.
[48] Doc. 84-2, p. 10.
[49] Doc. 84-2, p. 10.
[50] Doc. 84-2, pp. 10-11.
[51] Doc. 87, p. 4.

SJL acknowledges that while Lindquist did "check the math" on its estimates, he also relied upon his extensive experience and expertise in preparing and reviewing bids in the construction industry to analyze "SJL's estimated production rates for its crews, equipment usage, and material estimations."[52] Additionally, Lindquist relied on industry publications, such as the RS Means Standard Construction Cost Data 2010 Edition. Therefore, SJL contends that Lindquist's testimony will assist the trier of fact in determining whether SJL's bids for the constructions projects and expectations regarding how the work would be completed and associated costs were reasonable.

The Court finds itself in agreement with SJL. Although Lindquist's testimony does not rely on traditional scientific methods, he may still be deemed an expert witness based upon his experience in the construction industry.[53] "In such cases . . . courts recognize that '[e]xperts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'"[54] As previously discussed, the Advisory Committee notes to Rule 702 caution that the 2000 amendments were not "intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."[55]

During his deposition, Lindquist testified that he reviewed SJL's bids as he did "all of [his] bid reviews."[56] Specifically, he looked for miscalculations and whether something had been

---

[52] Doc. 87, p. 6.
[53] *Davis v. Carroll*, 937 F.Supp.2d 390, 412 (S.D.N.Y. 2013).
[54] *Id.* (quoting *Kumho Tire*, 526 U.S. at 149-50).
[55] *Pipitone*, 288 F.3d at 247.
[56] Doc. 84-6, p. 87. (Lindquist testified: "I was looking at the bid, and if something came out that there was a mistake or an error or a miscalculation or something was left out, then I would call that an error. But I was looking at the bid to see if it was reasonable and if it was calculated – if everything was calculated correctly and if anything stood out. So I've done a lot of bid reviews and that's how I do all my bid reviews.").

omitted from the bids. In assessing whether the bids were reasonable, he relied upon his forty-plus years of experience in submitting and reviewing bids in the construction industry to determine whether SJL's estimates regarding its crews, costs, production, and prices were appropriate under the circumstances.[57] Lindquist testified that he "looked at what S.J. Louis put in for their crew . . . what crew they had and what type of equipment, the size, the cost of the equipment per hour and what the production was," and considered how would have bid on a project with similar variables and factors in the past.[58] Lindquist then compared this information with industry standards, such as the RS Means Standard Construction Cost Data 2010 Edition.[59] Additionally, Lindquist delineated those documents that he reviewed in preparing his opinion in his report, which include the following: the contract plans and specifications; standard specifications for Baton Rouge; bidding documents; as-planned schedules for both projects;[60] bid results; and budgets of SJL included in bidding documents.[61]

The Court finds that Lindquist's specialized experience provides an adequate basis for his testimony. His opinion about the reasonableness of SJL's bids and bidder expectations are closely related to his many years of experience in the construction industry. Any concerns regarding the basis for Lindquist's opinion should be inquired into through "vigorous cross-examination."[62] The Court further finds that Lindquist's opinions will aid the jury.

C. Relevance of Lindquist's Testimony

---

[57] Doc. 84-6, pp. 90-91.
[58] Doc. 84-6, pp. 91-92.
[59] Doc. 84-6, pp. 91-92.
[60] When asked during his deposition what is an "as-planned schedule" Lindquist testified that it is "how you plan to construct the project." Doc. 84-6, p. 69. Later in the deposition, Lindquist expressed his agreement with the City-Parish attorney's description of an "as-built schedule" as being a "schedule that is created in correlation with the actual production of the construction work itself." Doc. 84-6, p. 111.
[61] For the Central Consolidated Pump Station 42 Force Main, Phase II project, Lindquist also considered various work directives, various requests for contract change, and AMS Damages Analysis. Doc. 84-5, p. 5.
[62] *See Daubert*, 509 U.S. at 596.

11

The City-Parish argues that whether SJL's bid submissions and associated work estimations were reasonable is not a material issue in this case. Rather, the issues in this case involve whether delays, disruptions, interferences, and associated costs during the performance of the construction projects are attributable to SJL, the City-Parish, or to a third party. Therefore, Lindquist's testimony regarding bidder expectations and bid reasonableness is not relevant.

The Court disagrees. SJL has alleged that the City-Parish failed to submit adequate and accurate information within its plans and specifications from which SJL prepared its bids and as-planned schedules. SJL contends that the City-Parish's inaccuracies in its plans and specifications contributed to the unexpected delays and additional expenses that occurred during the completion of the construction projects in this case. The Court finds that fundamentally, whether SJL's bids and bidder expectations were reasonable based upon the information provided to it by the City-Parish in preparing said bids, is at issue in this case. Therefore, Lindquist's testimony on the reasonableness of SJL's bids and bidder expectations will assist the trier of fact, and is therefore, relevant.

D. Alternative Arguments

In the alternative, the City-Parish contends that if Lindquist is allowed to testify, he should not be allowed to express an opinion "regarding the application of any portion of the bid to what was actually done during the construction work of either Project."[63] The Court is a bit puzzled by the City-Parish's request, as this falls beyond the scope of Lindquist's proffered expert testimony. In fact, during his deposition, Lindquist repeatedly testified that he had no opinion about whether SJL followed its as-planned schedules for the projects and, if asked at trial, he would have no such opinion on this particular issue.[64] Also during Lindquist's deposition, counsel for SJL repeatedly

---

[63] Doc. 84-2, p. 11.
[64] Doc. 84-6, pp. 83-84; and 117-18.

explained that Lindquist did not conduct an as-built analysis or comparison of the as-built schedule to the as-planned schedule.[65] In its *Opposition*, SJL also pointed out that it had another expert who would opine on SJL's actual performance of the construction projections.[66] Accordingly, it appears to the Court that SJL has conceded that Lindquist will not offer an opinion or testimony regarding the application of the bids to the actual performance of the construction projects. Therefore, the City-Parish's requested relief as to this testimony is denied as moot. Nonetheless, if attempts are made during to trial to elicit such testimony from Lindquist, the City-Parish may assert an objection at that time.

The City-Parish also seeks to prevent Lindquist from offering an opinion regarding the reasonableness of the damage analysis on the Central Phase Consolidated Pump Station 42 Force Main, Phase II construction project that were offered by AMS through Peter Wade, because Lindquist did not perform any independent calculations or otherwise confirm AMS' findings offered in its report. SJL did not address the City-Parish's argument. It is well-settled that when expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence.[67] On this particular challenge, SJL has failed to meet its burden. Accordingly, Lindquist shall not be permitted to testify about the reasonableness of AMS' damage analysis.

---

[65] Doc. 84-6, pp. 117-18. (Mr. Dibasi (counsel for SJL): . . . he's already testified [that] he didn't compare the as-built versus the as-planned. His scope of work, as the document says, was tailored to provide his professional expert opinion based on his experience and industry practice as to whether S.J. Louis' bids for both jobs were reasonable, whether their as-planned schedules for both jobs were reasonable, and whether they were achievable based in his view at the time of the bid.").
[66] Doc. 87, p. 8.
[67] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

## IV. CONCLUSION

For the foregoing reasons, the *Motion in Limine to Exclude Expert* filed by the City of Baton Rouge/Parish of East Baton Rouge is hereby GRANTED IN PART and DENIED IN PART.[68]

The *Motion* is hereby denied insofar as it challenges Robert J. Lindquest's qualifications, methodology, and the relevancy of his testimony on the subject of bidder expectations and bid reasonableness.

The *Motion* is hereby denied as moot insofar as it seeks to prevent Robert J. Lindquest from offering an opinion about the application of the bids to the actual performance of the construction projects. As previously discussed in this *Ruling*, in the event attempts are made to elicit such testimony from Robert J. Lindquist on this issue during trial, the City-Parish may reassert its objection.

The *Motion* is hereby granted insofar as it seeks to prevent Robert J. Lindquest from testifying as to the reasonableness of Analytical Management Solutions' damage analysis.

Signed in Baton Rouge, Louisiana, on <u>May 16, 2018.</u>

                                  **JUDGE JOHN W. deGRAVELLES**
                                  **UNITED STATES DISTRICT COURT**
                                  **MIDDLE DISTRICT OF LOUISIANA**

---

[68] Doc. 84.