UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


S.J. LOUIS CONSTRUCTION                                    CIVIL ACTION
OF TEXAS, LTD.

VERSUS
                                                          NO. 14-00566-JWD-EWD
CITY OF BATON ROUGE AND
PARISH OF EAST BATON ROUGE


## RULING

Before the Court is a *Motion for Partial Summary Judgment* filed on behalf of the

Defendant and Plaintiff-in-Counterclaim, the City of Baton Rouge/Parish of East Baton Rouge

("City-Parish").[1] Plaintiff and Defendant-in-Counterclaim, S.J. Louis Construction of Texas, Ltd.

("SJL") has filed an *Opposition* to which the City-Parish has filed a *Reply*.[2] For the following

reasons, the City-Parish's *Motion* shall be denied.

## I.      FACTUAL AND PROCEDURAL HISTORY[3]

This diversity action concerns two sewer construction projects built for the Sanitary Sewer

Outfall Program ("SSO") that was mandated as a result of a November 2001 Consent Decree

among the United States Department of Environmental Protection, the State of Louisiana, and the

City of Baton Rouge.[4] The purpose of the SSO was to address deficiencies in the capacity and

---

[1] Doc. 85.

[2] Docs. 88 and 93.

[3] While the parties offer differing explanations about what each of the individual Project's specific objectives were, neither party has cited to any record evidence in support of their differing opinions. It goes without saying that evidentiary support is essential on summary judgment motions. Nor is it the Court's job to comb through the record to make either party's case. As has been stated by the Fifth Circuit and this Court, "judges are not like pigs, hunting for truffles buried" throughout the record. *Odeh v. City of Baton Rouge/Parish of Baton Rouge*, Civil Action No. 14-00793, 2017 WL 3726019, *17 n. 133 (M.D.La. August 29, 2017)(quoting *Arlington Apartment Investors, L.L.C. v. Allied World Assur. Co. (U.S.), Inc.*, 612 Fed.Appx. 237, 238 (5th Cir. 2015); *see also, De La O v. Housing Auth. of City of El Paso, Tex.*, 417 F.3d 495, 501 (5th Cir. 2005)(citations and quotations omitted).

[4] Doc. 1, p. 3; Doc. 6, p. 4; Doc. 13, p. 5.

infrastructure of the sanitary systems in and around the City of Baton Rouge, Louisiana.[5] The two sanitary sewer construction projects at issue are the Bayou Duplantier Sewer Area Upgrades, Project No. 09-GS-MS-0042 ("Bayou Duplantier Project") and the Central Consolidation Pump Station 42 Force Main Phase II, Project No. 09-FM-MS-036B ("Central Consolidation Project")(collectively "Projects").[6]

On August 9, 2012, in response to the City-Parish's solicitation of bids, SJL submitted a bid for the Bayou Duplantier Project.[7] Because the City-Parish deemed SJL to be the lowest responsible and responsive bidder, on November 8, 2011, it awarded SJL a contract to construct the Bayou Duplantier Project for the original bid or contract price of $4,835,681.50.[8] Subsequently, on February 2, 2012, in response to another City-Parish solicitation of bids, SJL submitted a bid for the Central Consolidation Project.[9] The City-Parish once again deemed SJL to be the lowest responsible and responsive bidder and, on March 23, 2012, awarded SJL a contract to construct the Bayou Duplantier Project for the original bid or contract price of $12,322,052.40.[10]

On September 11, 2014, SJL filed a *Complaint and Demand for Trial by Jury* against the City-Parish in which it claims that during the Projects it encountered owner-caused delays, interferences, disruptions, and other events, which were beyond SJL's control and prevented SJL from meeting either of the Project's Baseline Schedule completion dates.[11] For instance, SJL has alleged that the City-Parish knew and disregarded that its plans and specifications for each Project "were inaccurate and/or incomplete and would result in additional and extra work[,] and that certain utility conflicts and/or changes to the work would be necessary and impede the completion

---

[5] Doc. 1, p. 3; Doc. 6, p. 4; Doc. 13, p. 5.
[6] Doc. 1, pp. 2-3; Doc. 6, p. 3; Doc. 13, p. 5.
[7] Doc. 85-2, p. 1; Doc. 88-1, p. 1.
[8] Doc. 85-2, p. 1; Doc. 88-1, p. 1; Doc. 85-6, pp. 32-35.
[9] Doc. 85-2, p. 1; Doc. 88-1, p. 1.
[10] Doc. 85-2, p. 1; Doc. 88-1, p. 1; Doc. 85-7, pp. 10-12.
[11] Doc. 1, pp. 7-8; Doc. 6. (SJL's *First Supplemental and Amended Complaint and Demand for Trial by Jury*).

of both [Projects]."[12]   SJL further alleges that it "encountered material alterations to the original plans and specifications and major changes to the contracted scope of work that materially and drastically changed the character and scope of work on both of the [Projects], causing an increase in cost and performance time."[13]   Additionally, SJL claims that the City-Parish's authorization of material design revisions to the Projects' plans and specifications during the course of construction "actively and materially interfered with [SJL's] operations and resulted in substantial increases in the cost and time of performance, the quality and character of the work, and the [Projects'] quantities."[14]   SJL has asserted various state law claims against the City-Parish including claims for breach of contract and breach of warranties in an attempt to recover damages against the City-Parish for costs associated with additional and extra work performed, including additional labor, materials, and equipment, resulting from changes to the Projects.[15]

The City-Parish denies SJL's allegations, and has asserted compulsory counterclaims against SJL.[16]   It is the City-Parish's contention that SJL caused "the majority of the delays, disruptions, and interferences encountered over the course of both Projects."[17]   For instance, the City-Parish has alleged that SJL was negligent in its performance of both Projects, including but not limited to its improper management and/or failure to manage the Projects.[18]   The City-Parish further contends that, "SJL materially changed its work in contradiction to the City/Parish's design plans, specifications, and/or drawings without notifying the City/Parish and/or the Project

---

[12] Doc. 1, pp. 7-8; Doc. 6, p. 8.
[13] Doc. 1, p. 7; Doc. 6, p. 8.
[14] Doc. 1, pp. 7-8; Doc. 6, pp. 8-9.
[15] Doc. 1 and Doc. 6.   SJL has also asserted state law claims of breach of good faith and fair dealing and misrepresentation that are not the subject of the pending *Motion*.
[16] Doc. 13 (City-Parish's *Answer to Amended Complaint*); Doc. 47 (City-Parish's *Amended Answer, Affirmative Defenses, and 13(E) Compulsory Counterclaim*).
[17] Doc. 47, p. 6.
[18] Doc. 47, p. 6.

Manager."[19]   As a result of "SJL's negligence, breach of contract, and breach of good faith and fair dealing," the City-Parish seeks to recover costs associated with hiring third-party contractors to repair and complete the Projects, and liquidated damages attributed to SJL's delay in completing the Projects by the contracted completion dates.[20]

The City-Parish now moves for partial summary judgment on SJL's breach of warranties claims, as well as the City-Parish's affirmative defense that it made no such warranties.[21]   The City-Parish argues that because it made no express or implied warranties to SJL over the course of the Projects or through any contractual documents, it is entitled to summary judgment as a matter of law on SJL's breach of warranties claims.   Since there were no express or implied warranties, the City-Parish further contends that SJL breached its contractual duty to investigate and uncover underground utilities within the work sites prior to commencing work on the respective Projects; therefore, the City-Parish concludes that it is not liable for any damages that SJL seeks for delays associated with unidentified underground utilities.   The City-Parish also posits that SJL failed to mitigate its Projects' delays and instead unlawfully sought to re-negotiate established Unit Prices, which only led to further delays for which SJL is liable.[22]   The City-Parish also moves for summary judgment on its own breach of contract claims arising out of two incidents where SJL's performance allegedly fell below the workmanship level required and expected of a

---

[19] Doc. 47, p. 7.

[20] Doc. 47, p. 8.

[21] In its memorandum, the City-Parish states that "[t]he arguments presented herein apply to the City-Parish's defenses against SJL's claims and in part to the City-Parish's counterclaims as outlined below."  Doc. 85-3, p. 5.  The City-Parish did not specify which claims/defenses were being addressed by its respective arguments.  Where the City-Parish failed to offer guidance, the Court has construed those arguments in the light that best relates to the City-Parish's claims/defenses in its *Answers*.  For instance, while the City-Parish did not indicate that its affirmative defense raised in response to SJL's breach of warranties claims pertains to the arguments raised in its summary judgment motion, the Court has considered it in conducting its analysis.

[22] Although never expressly stated as such, the Court construes this argument to be premised upon the City-Parish's affirmative defense raised in its *Answer to First Supplemental and Amended Complaint*.  Doc. 13, p. 3.

responsible general contractor: the Bayou Duplantier Project pond breach and the installation of air release valves (ARVs) on Central Consolidation Project.[23]

SJL disagrees with the City-Parish's arguments, and asserts that there are genuine issues of material fact in dispute that prevent summary judgment from being granted.

## II.  LEGAL STANDARD: SUMMARY JUDGMENT[24]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25]  "An issue is material if its resolution could affect the outcome of the action."[26]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[27]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[28]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its

---

[23] The City-Parish did not specifically identify which of its claims it was seeking relief under based on SJL's inadequate work performance.  After reviewing the City-Parish's counterclaims, however, the Court construes this particular counterclaim as being premised upon the City-Parish's own breach of contract claims.  See, Doc. 47, pp. 5-6. ("¶15. SJL failed to meet its contractual obligations under both [Projects] by performing inadequate and unfinished work."  "¶17. The City-Parish contracted with a new contractor . . . to complete the inadequate and unfinished work left by SJL.  Due to the extent of the inadequate and unfinished work left by SJL, the new contractor is incurring costs owed by the City-Parish which is still accruing as of the date of the filing of this pleading." ¶18. "SJL breached its duties and obligations under the subject contracts and is liable to the City/Parish for any and all damages sustained as a result of said breaches.").

[24] Because this matter is before the Court on diversity jurisdiction, the Court is bound to apply federal procedural law and Louisiana substantive law.  *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938).

[25] FED. R. CIV. P. 56(A).

[26] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)(quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).

[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[28] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986))).

case.'"[29]  However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[30]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[31]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[32]  However, "[t]he court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[33]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[34]

## III.    ANALYSIS

### A.  SJL's Breach of Warranties Claims and City-Parish's Affirmative Defense

In response to SJL's breach of warranties claims, the City-Parish has raised an affirmative defense that it made no warranties regarding the Projects' construction contracts.[35]   The only representation that the City-Parish admits to making is that the plans were "adequate."[36]

---

[29] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

[30] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[31] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[32] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[33] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[34] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[35] Doc. 13, p. 3.

[36] Doc. 13, p. 1.

In support of its affirmative defense, the City-Parish argues, without much discussion, that the general rule of law mentioned in the Louisiana Supreme Court decision, *Brasher v. City of Alexandria*, supports a finding that SJL's breach of warranties claims must fail.[37]  *Brasher's* general rule of law provides: "if destruction of a work during the course of construction is caused by defective, inadequate, or insufficient plans and specifications furnished by the owner, the contractor is nevertheless liable."[38]  However, the *Brasher* court explained that an exception to the general rule exists "where the owner expressly or impliedly warrants the sufficiency of the plans furnished by him."[39]

The City-Parish argues, albeit cryptically, that *Brasher's* general rule applies because instead of warranting that there would be no impediments to SJL, or any other contractor for that matter, while working on its Projects, it did the opposite.  The City-Parish, via special provisions throughout the Projects' contractual documents, claims that it apprised all potential contractors that there would be certain impediments to working in certain areas of the Projects during certain periods of time.

For instance, Bayou Duplantier's Special Provision Section 7-5.2, Work in Servitude Over Private Property, provides in pertinent part as follows:

> servitudes from Station 106+84 (Sht. C-1) to 154+95 (Sht. C-8) and station 309+89 (Sht. C-20) to 329+34 (C-22) have not yet been acquired by the Owner, and the servitude agreements are expected within 60 days after Notice to Proceed for construction is issued.  Contractor will not be allowed to commence Work in any areas that do not have servitude agreements in place.[40]

The City-Parish also cites to Bayou Duplantier's Special Provision 9-4, Prosecution of Work, which states that "**[t]he Contractor shall not perform any work on Lee Drive through**

---

[37] *Brasher v. City of Alexandria*, 215 La. 887 (1949).
[38] *Id.* at 917 (citations omitted).
[39] *Id.* (citations omitted).
[40] Doc. 85-6, p. 26.

the entire duration of the LSU home football season . . . For the 2011 LSU football season this will extend from 7:00 AM on Friday 9-9-11 until 7:00 AM on Monday 11-28-11."[41]

Based on these provisions, as well as others within the Projects' contractual documents, the City-Parish argues that SJL cannot create a genuine dispute of material fact that the City-Parish warranted that SJL would have generally unimpeded ability to gain and/or maintain access to the worksites. Considering that there was no warranty, the City-Parish contends that the *Brasher's* general principle of law applies, and SJL is liable for its own damages.[42]

In response, SJL counters that the City-Parish has mischaracterized its claims as they do not arise from the "destruction of a work during . . . construction."[43] Rather, its breach in warranties claims are attributed solely to the City-Parish and its allegedly inadequate and insufficient plans and specifications. Therefore, SJL contends that this case "falls squarely within the *Spearin* doctrine" as set forth by the United States Supreme Court in *U.S. v. Spearin*, which was adopted by the Louisiana Supreme Court in *Louisiana Shipbuilding Co. v. Bing Dampskibsaktieselskab*.[44]

In *Spearin*, the contractor agreed to build a dry dock at the Brooklyn navy yard pursuant to the plans and specifications that had been prepared by the government. Before he could begin working on the dry dock, however, the contractor had to relocate a section of a 6-foot brick sewer

---

[41] Doc. 85-6, p. 28. (emphasis original).
[42] The Court notes that in its *Reply*, the City-Parish makes unsubstantiated conclusory statements to support its contention that SJL failed to adhere to the plans and specifications for each project, and therefore, SJL cannot prove that the City-Parish owed and breached an implied warranty for the Projects' specifications and plans. (*e.g.*, "However, during the life of the projects, SJL continued to violate the plans and specifications of each project as depicted by the City/Parish's numerous notice of nonconformance reports ("NCRs") to SJL." The City-Parish also offers argument, without evidentiary support, regarding the original scope of each Project. Doc. 93. Such unsupported allegations setting forth "ultimate or conclusory facts" are insufficient to support a motion for summary judgment. *Galindo*, 754 F.2d at 1215; *see also Little*, 37 F.3d at 1075.
[43] Doc. 88, p. 4.
[44] *U.S. v. Spearin*, 248 U.S. 132 (1918); *Louisiana Shipbuilding Co. v. Bing Dampskibsaktieselskab*, 158 La. 548 (1924).

that intersected the chosen site for the dry dock. "The plans and specifications provided that the contractor should do the work and prescribed the dimensions, material and location of the section to be substituted."[45] The contractor fully complied with the requirements and the government accepted the substituted section as satisfactory. Both before and after the diversion of the 6-foot sewer, it was connected to a 7-foot sewer within the Navy Yard, but outside of the space to be used for the dry dock.

Approximately one year after the relocation of the 6-foot sewer, a combination of a heavy downpour of rain and a high tide forced water up the sewer causing the internal pressure to break the 6-foot sewer in several places, while the excavation of the dry dock area was flooded. Upon further investigation it was discovered that there was a 5 to 5 ½ foot high dam within the 7-foot sewer, which had been constructed to divert the heavy waters to the 6-foot sewer; hence, this dam had caused the 6-foot sewer to break. Importantly, the dam was not shown on the city's sewerage system, nor the government's plans or blueprints that were submitted to the contractor. Therefore, according to the plans, the 7-foot sewer appeared to be unobstructed.

In upholding the contractor's contentions that the plans and specifications provided by the government were insufficient and defective, thereby preventing the performance of the work, the Court reasoned as follows:

> The general rules of law applicable to these facts are well settled. Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. Thus one who undertakes to erect a structure upon a particular site, assumes ordinarily the risk of subsidence of the soil. But if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. This responsibility of the owner is not overcome by the usual clauses requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work . . . .[46]

---

[45] *Id.* at 133-34.
[46] *Id.* at 136 (internal citations omitted).

The *Spearin* Court also found that an implied warranty existed such that if the specifications—which prescribed the character, dimensions, and location of the sewer—were complied with, then the sewer would be adequate. The Court further explained that the "implied warranty is not overcome by the general clauses requiring the contractor to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance."[47]

As for its claims in this case, SJL has alleged that "[t]he City-Parish prepared the plans and specifications for the [Projects] prescribing the character, dimensions and location of the work."[48] SJL also claims that "the City-Parish entered into the Bayou Contract and Central Contract with knowledge that bidders, including S.J. Louis, would submit their bids based on the conditions represented in each set of Contract Documents, including, but not limited to, access, the conditions at the site, sequence of construction, specified methods of construction, utility locations and utility construction, quantities, and the contract milestones.[49] The City-Parish warranted that its plans and specifications were accurate, and, if followed, would permit the contractor to perform a certain scope of work within each of the specified contract timeframes."[50] SJL has also alleged that the City-Parish "expressly and implicitly warranted the plans and specifications were adequate to define the scope of work, perform the work, and that, if the contractor performed the work in accordance with those plans, [ ] the work would be acceptable and could be completed within the specified timeframes."[51]

Additionally, SJL has offered undisputed record evidence showing that its claims are attributed to delays caused by owner-directed changes and continuing revisions to the City-

---

[47] *Id.* at 137.
[48] Doc. 1, p. 18; Doc. 6, p. 19.
[49] Doc. 1, p. 6; Doc. 6, p. 7.
[50] Doc. 1, p. 6; Doc. 6, p. 7.
[51] Doc. 1, pp. 6 and 19; Doc. 6, pp. 7 and 23.

Parish's inaccurate plans and specifications. Specifically, SJL identifies one such instance arising out of its work on Bluebell Street during the Bayou Duplantier Project where it was supposed to perform an excavation and installation of a sewer pipe.[52] SJL relied on the specifications and plans which provided for "stable and undisturbed earth" at the worksite; however, once excavation began, SJL realized other means would be necessary to complete the work due to the unstable soil conditions.[53] Although SJL sought a contract change order to cover additional costs needed to complete the work, the City-Parish issued a "Stop Work" order instead; therefore, SJL was directed to stop working along Bluebell Street.[54] Until SJL provided a "corrective action plan" to the City-Parish, the Stop Work order would not be lifted.[55] As a result of the City-Parish's decision to issue a Stop Work order, SJL claims that it experienced owner-caused delays and disruptions that adversely affected SJL's work progress and anticipated costs.

Considering the nature of SJL's breach of warranties claims, which concern the accuracy of the City-Parish's plans and specifications that SJL was bound by, the Court finds that the claims fall within the purview of the *Spearin* doctrine as opposed to general rule of law from *Brasher*. Additionally, SJL has brought forward competent evidence demonstrating that a question of fact exists as to whether the *Spearin* doctrine applies in the instant case thereby precluding summary judgment. Accordingly, the Court shall deny the City-Parish's *Motion* as to SJL's breach of warranties claims as a matter of law.

---

[52] Doc. 88-3, pp. 5-6.
[53] Doc. 88-3, pp. 6, 8, 64, and 65.
[54] Doc. 88-3, p. 7.
[55] Doc. 88-3, p. 8 and 61-62.

B. Breach of Warranties and Breach of Contract Claims Related to Utility Conflicts

The City-Parish argues that SJL should not be able to recover any monetary damages for any alleged delays and associated costs attributable to underground utilities discovered during the course of the work on the Projects. The City-Parish's argument is three-fold.

First, the City-Parish argues that pursuant to the express language of Section Two of the General Provisions of the Projects' contractual documents, the parties made known "their express understanding that all plan drawings, specifications, and corresponding soil boring logs were not intended to provide the contractor with exact, precise or complete representations of the location, character or size of all things underground, whether they be utilities, soil conditions, or otherwise."[56]

Section 2-9 of the General Provisions provides as follows:[57]

The bidder is expected to examine carefully the site of the proposed work, the proposal, plans, project specifications and contract forms before submitting a proposal . . . The location, character, and size of underground natural features and existing subsurface structures shown on the plans were obtained for use by the engineer in the preparation of design, and the City-Parish assumes no responsibility for the accuracy of such data.[58]

Section 2-9.2 of the General Provisions also states:

When logs of test holes, ground water levels and any accompanying soil, geological or seismic reports are included in the plans or specifications, such data is furnished for information only. The field conditions so set forth shall not constitute a warranty that such conditions actually exist. Bidder should make their own investigations of the site conditions, both above and below ground.[59]

---

[56] Doc. 85-3, p. 10.
[57] Neither party disputes the fact that the 1997 Standard Specifications for Public Works Construction, including its General Provisions section, were made a part of both Project's contractual documents. Doc. 85-5, pp. 1-49.
[58] Doc. 85-5, p. 17.
[59] Doc. 85-5, p. 17.

Based upon the foregoing contractual language, the City-Parish asserts that it did not warrant the plans or specifications.[60]

The Court finds that the resolution of this particular claim ultimately hinges upon whether the City-Parish's plans and specifications were sufficient and accurate. Pursuant to the *Spearin* Court, any "implied warranty" by the City-Parish that its plans and specifications were accurate will "not be overcome by the general clauses [in this case, Sections 2.9 and 2-9.2 of the General Provisions] requiring the contractor to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance."[61] Because the parties take opposing positions on the accuracy and sufficiency of the City-Parish's plans and specifications, summary judgment is not appropriate on SJL's breach of warranties claims based on underground utility conflicts.

Second, the City-Parish argues that SJL, as the excavator on the Projects, breached its "legal duty" to discover any unknown underground utilities during its pre-bidding inspections.[62] In response, SJL cites to undisputed evidence that shows that the City-Parish did not adhere to this principle with all contractors and calls into question whether SJL did, in fact, have such a duty. Specifically, the City-Parish authorized change orders to other contractors performing work on the SSO Program for "Differing Site Conditions" in order to avoid conflicts with unforeseen underground utilities.[63]

According to the City-Parish, in order for SJL to recover damages for any such breach due to unknown or undisclosed utilities, SJL must prove "(1) the owner of the 'unknown or

---

[60] Doc. 85-3, p. 12.
[61] *Spearin*, 248 U.S. at 137.
[62] Doc. 85-3, pp. 6 and 15.
[63] Doc. 88-4. (Change Orders for the Central Consolidation Project permitted to avoid conflicts with unforeseen Baton Rouge Water Line, AT&T Fiber Optic Ductbank, and Unforeseen Petroleum Pipelines.).

undisclosed' utility, (2) whether said utility was recorded with the regional notification center, and in the event that said utility(ies) was lodged with the regional notification center, (3) whether the City/Parish received said information on such an 'unknown or undisclosed' underground utility that was left out of the plans and specifications that were provided to SJL for each of the respective projects. Additionally, SJL must establish with the Court how it was precluded from discovering information about the underground utilities that were not made known to it by the City/Parish."[64] Importantly, the City-Parish cites no legal authority for the foregoing burden of proof that it asserts SJL must satisfy on this breach of contract claim; therefore, the Court finds no merit in the City-Parish's argument.

As an alternative argument, the City-Parish contends that it "fulfilled its duty of making itself aware of all known underground utilities within the parameters of both Projects by contact the State of Louisiana's regional notification center for same."[65] The City-Parish further asserts that it, "through its utilities manager, SIGMA, contacted the regional notification center, who in turn notified the known utility owners across the limitations of both the Bayou and CCP2 projects in accordance with La. R.S. 40:1749.11, *et seq*., the 'Louisiana Underground Utilities and Facilities Damage Prevention Law.'"[66] The City-Parish, however, offers no evidentiary support for either statement. It is well-settled that such unsupported allegations setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to support a motion for summary judgment.[67] And while recitation of relevant state law is informative, it does not evince that the City-Parish actually complied with its duties under those laws or the contracts General

---

[64] Doc. 85-3, pp. 19-20.
[65] Doc. 85-3, p. 15.
[66] Doc. 85-3, p. 17.
[67] *Galindo*, 754 F.2d at 1215; *see also Little*, 37 F.3d at 1075.

Provisions.[68]   Therefore, the Court finds that the City-Parish has failed to carry its initial burden of proof, and that its *Motion* shall be denied on SJL's breach of contract claims related to utility conflicts and associated damages.

C. City-Parish's Affirmative Defense: SJL Failed to Mitigate

The City-Parish argues that SJL submitted Unit Price Forms as part of each of its bids that were incorporated into the contract documents for each of the respective Projects.[69]   During the performance of the Projects, SJL submitted proposals for Requests for Contract Change Orders that proposed higher unit prices than those contained in the Unit Price Forms.   The City-Parish asserts that it rightfully denied SJL's proposals for Requests for Contract Change Orders because they were unlawful attempts to renegotiate unit prices.

For instance, the City-Parish claims that pursuant to Louisiana Public Works Act, unit prices within the initial contract "shall not be renegotiated for the purpose of computing negotiated change orders."[70]   La. R.S. 38:2212(m)(5) of the Public Works Act provides as follows:

> Any change order pertaining to public work, not required by this Part to be let out for public bid, shall either be negotiated in the best interest of the public entity or let out for public bid as provided by this Part.  Where the change order is negotiated, the public entity shall require that such change order be fully documented and itemized as to costs, including material quantities, material costs, taxes, insurance, employee benefits, other related costs, profit, and overhead.   Where certain unit prices are contained in the initial contract, no deviations shall be allowed in computing negotiated change order costs.

Based on the foregoing statutory provision, the City-Parish asserts that SJL should be responsible for the delay costs it seeks to recover due to its own failure to properly mitigate such damages.

---

[68] For instance, the City-Parish recites La. R.S. § 2223, entitled Issuance of Work Orders and Commencement of Work; Underground Utilities, in its entirety and claims that it complied with the foregoing statute.  Doc. 85-3, pp. 15-16.

[69] The City-Parish cites to the Unit Price Forms that were submitted with SJL's bids and subsequently incorporated into each of the Project's contractual documents.

[70] Doc. 85-3, p. 14.

In response, SJL argues that it never sought to renegotiate prices. Rather, the damages that it seeks to recover are for additional and extra work attributed to "owner-directed changes (e.g. design changes), delay and disruption claims, and changed conditions claims."[71] In its *Complaints*, SJL has specifically asserted as much.[72] SJL further alleged that although the City-Parish was obligated under each of the respective contracts to issue change orders and additional compensation necessary to compensate SJL for additional and extra work performed and additional quantities, the City-Parish failed to do so.[73]

SJL also correctly argues that Louisiana law allows for the recovery of such damages if they can be proven. In *Sullivan v. La. DOTD*, the Louisiana Court of Appeal for the First Circuit stated as follows:[74]

> A contractor is obligated to perform in accordance with contract plans and specifications. However, it is well-settled that the requirement of public bidding, LSA-R.S. 38:2211 *et seq*., is not fulfilled unless the plans and specifications are sufficiently definite and explicit beforehand. If the DOTD fails to provide sufficiently definite and explicit plans and specifications, it will be liable for the additional costs incurred as a result of this failure.[75]

As applied to the instant matter, if SJL successfully proves that the City-Parish failed to provide definite and accurate plans and specifications, then the City-Parish will be liable for SJL's additional costs as a result of this failure. Louisiana law also provides that, to the extent that SJL

---

[71] Doc. 88, p. 10.

[72] Doc. 1, p. 8; Doc. 6, p. 9. ("Throughout the course of the [Projects], S.J. Louis submitted various claims seeking additional costs, including, but not limited to, labor, materials and equipment, and extensions to the contract completion dates caused by changes in the design, changes caused by the design, and/or resulting from the action and inaction of the City-Parish and its agents."); Doc. 1, p. 7; Doc. 6, p. 14 ( SJL repeatedly claimed that the City-Parish breached its duty to provide accurate plans and specifications with workable operations within the City-Parish's established time-frames, and, in some instances, the City-Parish caused changes to the work to be performed on the Projects which created additional costs, delays and disruption to the Projects.).

[73] Doc. 6, p. 15 and 18. SJL has alleged, in part. that it was seeking the recovery of additional costs, expenses, and for time impacts "resulting from directed and/or necessary changes to the [Bayou Duplantier Project] arising and/or relating to . . . Rework caused by owner interference and damages from owner operation of pump stations PS 56 and PS 91; sheet pile and utility conflicts not shown on drawing C-22." Doc. 6, p. 10.

[74] *Sullivan v. State of Louisiana, through Dept. of Transp. and Dev.*, 623 So.2d 28 (La.App. 1 Cir. 7/2/93), *reh'g denied* 9/14/93, *writ denied* 12/20/93.

[75] *Id.* at 30. (internal citations omitted).

can establish that it incurred any damages due to any delays in performing the Projects, and that these delays were caused in whole or in part by the City-Parish, then SJL is entitled to recover those damages.[76]

Considering the nature of SJL's claims in conjunction with relevant Louisiana jurisprudence, the Court finds that the City-Parish is not entitled to summary judgment on its affirmative defense that SJL cannot recover damages.

D. The City-Parish's Breach of Contract Counterclaims for SJL's Alleged Inadequate Work

The City-Parish argues that it is entitled to reimbursement for costs because SJL breached its contractual duties of performing adequate and competent work.[77] It is the City-Parish's position that "[n]othing within either set of the Project's Contract Documents misled SJL as to what was anticipated to be encountered at the project sites."[78] According to the City-Parish, where the Projects' contractual documents depicted private property, SJL, as the Contractor, was expected to protect said private property. The City-Parish relies upon the following General Provision to show that the contractor is responsible for the costs of any necessary repairs to private property caused by the contractor while working on the Projects:

> Section 7-5.3, Preservation and Restoration of Property: The contractor shall protect public and private property and shall take reasonable precaution to avoid damage to such property. Public or private improvements or facilities within the right-of-way not designated for removal but visibly evident or correctly shown on the plans which are damaged due to the contractor's operations shall be restored by the contractor at the contractor's expense to a condition equal to that existing before such damage, by repairing or rebuilding, or if this is not feasible, a reasonable settlement shall be made with the owner of the damaged property.[79]

---

[76] *Gilchrist Const. Co., LLC v. State, Dept. of Transp. and Devel.*, 2013-CA-2101 (La.App. 1 Cir. 3/9/15), 166 So.3d 1045, 1052. (discussing how La. R.S. 38:2216(H) expressly prohibits public contracts that purport to waive or extinguish the rights of a contractor from recovering cost damages for delays in performing the contract where such delays are caused whole in party by the acts or omissions within the control of the contracting public entity or persons acting on behalf of the public entity.).
[77] Doc. 47, p. 5.
[78] Doc. 85-3, p. 12.
[79] Doc. 85-5, p. 38.

The City-Parish asserts that there are two specific examples of work where SJL's performance fell below the workmanship level required and expected of a responsible contractor: (1) the pond breach during a trench excavation on the Bayou Duplantier Project; and (2) the failure of SJL to install ARVs at designated points across the pipeline during the Central Consolidation Project. The Court shall address each argument in turn.

1. Bayou Duplantier Project: Pond Breach

According to the City-Parish, it made known the existence of three ponds on a residential property and near the planned pipeline excavation site.[80] The City-Parish offers the conclusory arguments that "SJL breached the pond during trench excavation, which resultantly damaged the homeowner's private property while also causing SJL's trench to become flooded with pond water," and "[a]s shown by SJL's direct knowledge of the ponds and their ineffective execution of trench operations, SJL caused private property damage as a result of its poor workmanship."[81] Because SJL did not repair the private property, the City-Parish points to record evidence showing that it "awarded the subsequent pond levee repair contract to Boones Services, LLC" for $48,200.00.[82]

Although SJL does not dispute the fact that the pond was breached, it denies any responsibility for said breach. While SJL has offered the expert testimony of Robert Bachus, Ph.D. to show that the leakage from the pond was "due to the close proximity of the trench box to the pond," the Court cannot consider his expert testimony as it is not competent summary judgment evidence.[83] Dr. Bachus' expert report is unauthenticated; therefore, his report may not be

---

[80] Doc. 85-9.
[81] Doc. 85-3, p. 13. (includes Sheet C-15, Plan and Profile Station 195+33.24 to Station 201+96.33 for Bayou Duplantier Sewer Area Upgrades).
[82] Doc. 85-9, pp. 2 and 8.
[83] The City-Parish correctly asserts that because the report of Robert Bachus, Ph.D. was not "properly sworn to or certified" it must be stricken for a "lack of authenticity." Doc. 93, p. 4.

considered on summary judgment.[84]  As for SJL's remaining arguments, they are just that—unsubstantiated arguments.  For instance, SJL argues that it "performed its planned operations consistent with what was depicted in the plan approved by the City/Parish, SJL cannot be held responsible for any damage that resulted from its work."[85]  SJL further contends that it fulfilled its obligations to "take reasonable precaution" pursuant to Section 7-5.3 of the Standard Specifications, "by shoring its trench operations in the manner approved by the City/Parish."[86]  Additionally, SJL disputes that the "property allegedly damaged . . . was 'within the right of way.'"[87]

The Court finds that, while SJL has failed to provide proper summary judgment evidence to counter the City-Parish's position, the City-Parish is still not entitled to summary judgment because it has failed to satisfy its initial burden of proof on summary judgment.  At trial, the City-Parish will bear the burden of proving that SJL breached the parties' contract by failing to perform in a competent manner on the pond.  Therefore, to be entitled to summary judgment on this claim, the City-Parish must come forward with evidence that establishes "beyond peradventure[88] *all* of the essential elements of the claim."[89]  This means that the City-Parish, as movant, must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary

---

[84] *See* Fed. R. Civ. P. 56(e).  SJL has made no attempt to correct this deficiency by filing Dr. Bachus' sworn declaration. *See Greene v. Toyota Motor Corp.*, Civil Action No. 3:11-cv-207-N, 2014 WL 12575716, at *3 n. 5 (N.D. Tex. June 2, 2014).
[85] Doc. 88, p. 9.
[86] Doc. 88, p. 9.
[87] Doc. 88, p. 9.
[88] Peradventure is defined as "chance, doubt, or uncertainty."  www.dictionary.com (last visited June 22, 2018).
[89] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

judgment as a matter of law.[90]  The "beyond peradventure" standard has been repeatedly described as "heavy" by at least one district court.[91]

Importantly, for a breach of contract claim, the plaintiff must prove that the obligor failed to perform its obligation, resulting in a breach.[92]  In this case, aside from citing to the Bayou Duplantier Project's Civil Plan Sheet, the contract with Boone Services, LLC, and Section 7-5.3 of the Standard Specifications, the City-Parish has not identified any competent summary judgment evidence that demonstrates that SJL breached its contractual duty of protecting the private property (*i.e,* pond) and that it failed to take reasonable precaution(s) to avoid damage to such private property (*i.e.,* pond).  Accordingly, the Court finds that the City-Parish has failed to establish "beyond peradventure" all of the essential elements of its breach of contract claim. Therefore, summary judgment shall be denied on the City-Parish's breach of contract counterclaim related to the pond breach.

2.  Central Consolidation Project: Failure to Install Air Release Valves (ARV)

The City-Parish argues that "one aspect of the pipeline work involved installing air release valves ('ARV') at specifically designated points across the pipeline that serve to relieve pressure build-ups within the pipeline after they are placed into operation."[93]  The City-Parish further asserts that SJL failed to install a 48" pipe as designed, and that the City-Parish only discovered this

---

[90] *Bramlett v. Medical Protective Co. of Fort Wayne, IN*, Civil Action No. 10-2048, 2013 WL 796725, at *6 (N.D. Tex. Mar. 5, 2013).
[91] The United States District Court for the Northern District of Texas has repeatedly held that this is a "heavy burden." *See e.g., United States v. Villanueva*, Civil Action No. 15-3556, 2017 WL 1501546, at *2 (N.D. Tex. Apr. 6, 2017)(*citing Copeland v. D&J Constr., LLC*, Civil Action No. 13-4432, 2016 WL 1212128, at *2 (N.D. Tex. Feb. 16, 2016), *adopted by* 2016 WL 1182620 (N.D. Tex. Mar. 28, 2016); *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, Civil Action No. 04-1866, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007).
[92] The essential elements necessary for a breach of contract claim are threefold.  "The essential elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages." *Favrot v. Favrot*, 10-0986, pp. 14-15 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09 (citations omitted).  Additionally, "[t]he party claiming rights under the contract bears the burden of proof." *Id*., p. 15, 68 So.3d at 1109.
[93] Doc. 85-3, p. 13.

deficiency "after SJL permanently demobilized itself from the [Central Consolidation] Project."[94] Citing to record evidence, the City-Parish entered into a "Change Order Proposal" with a preexisting contract with Wharton-Smith, Inc., who then performed the ARV installation for $57, 417.75."[95]  It further cites to the Central Consolidation Project's bid documents to show that both 4-inch and 6-inch ARVs were marked as bid items.[96]

In response, SJL disputes that it was ever contractually obligated to perform this work.  SJL relies on the deposition testimony of Central Consolidation Project's Construction Manager, Jody Crawford, who agreed that the additional 4-inch ARV that SJL was directed to install in August of 2013 was additional work on the Project.[97]  The uncontroverted evidence shows that when SJL was instructed to perform this additional work, the City-Parish had not provided SJL with a revised drawing for SJL to perform the extra work.[98]  Mr. Crawford further testified that SJL was directed to perform this extra ARV work after the original contract completion date.[99]

Once again the Court finds that the City-Parish has failed to carry its initial burden on summary judgment.  With the exception of the Change Order Proposal with Wharton-Smith, Inc., the citation to Section 7-5.3 of the Standard Specifications, and the bid documents, the City-Parish has cited to no competent summary judgment evidence that shows that SJL was obligated to install the 4-inch ARV in relation to the 48" pipeline work and that it breached this duty.  These are essential elements of the City-Parish's breach of contract claim that it will have to prove at trial. Moreover, the Court finds that SJL has come forward with competent summary judgment evidence to create a genuine dispute of material fact as to whether it was contractually obligated to install

---

[94] Doc. 85-3, p. 13.
[95] Doc. 85-9, pp. 10-14.
[96] Doc. 85-7, p. 5.
[97] Doc. 88-8; Doc. 88-3, pp. 45-46.
[98] Doc. 88-3.
[99] Doc. 88-3, p. 47.

the ARVs on the 48" pipeline work.  Accordingly, the Court finds that because the City-Parish has failed to satisfy its heavy burden of proving that no genuine dispute of material fact exists on its breach of contract claim related to SJL's alleged failure to install ARVs, summary judgment shall be denied on this claim.

## IV.     CONCLUSION

For the foregoing reasons, the *Motion for Partial Summary Judgment* filed on behalf of the Defendant and Plaintiff-in-Counterclaim, the City of Baton Rouge/Parish of East Baton Rouge, is hereby DENIED.[100]

Signed in Baton Rouge, Louisiana this <u>26th</u> day of June, 2018.

_____

**JUDGE JOHN W. DEGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[100] Doc. 85.